ELLEN BACON et al. vs. JOHN WOOD.

PROVIDENCE—NOVEMBER 14, 1900.

PRESENT : Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Mortgages.   Assignment.   Building and Loan Associations.*

B. obtained a loan from a building company December 2, 1896, for which
he executed his negotiable promissory note payable one year after date,
with interest payable semi-annually in advance, the note being secured
by a mortgage.   At the same time B. entered into an agreement with
the building company in writing, by the terms of which he agreed to
pay the sum of $18 a month for the period of one hundred and twenty
months.   In consideration of these payments the building company
agreed to pay the interest on the note as it accrued, and to pay the prin-
cipal of the note on or before ten years from the date of the agreement.
The note and mortgage were transferred by the building company to W.
January 15, 1897, but the transfer was not recorded until February 27,
1899.   B. made various small payments to the building company from
the date of the note and mortgage until May 14, 1898, the amount of
such payments exceeding the sum of $18 a month.   The building com-
pany paid the semi-annual interest to W. in June and December, 1897.
In May, 1898, the company assigned for the benefit of creditors.   B. was
ignorant of the transfer of the note and mortgage until this time.   There-
after he paid the interest semi-annually to W. until December 2, 1899.
W. was a purchaser for full value.   December 4, 1899, B. tendered to W.
the amount of the note, less the sums paid the building company in
excess of what the semi-annual interest for the intervening period
amounted to, and demanded a transfer of the note and mortgage to a
third party.   W. demanded the amount of the principal, viz.: $1,500 with
interest to time of demand.   Upon a bill brought to compel such trans-
fer :—

*Held,* that the effect of the agreement between B. and the building com-
pany was to constitute the latter the agent of B. in paying the interest
and principal of the note, and, as incidental thereto, to negotiate and
transfer the note and mortgage, a proper construction showing that
the understanding of both parties was that the note and mortgage were
to be transferred to a third party.

*Held,* further, that by virtue of the agreement the ordinary relations of
payor and payee of a note secured by mortgage were changed between
the parties, a new method of paying the indebtedness by B. being sub-
stituted, and the company assuming the payment of the interest and
principal.

*Held,* further, that the act of the building company in transferring the
note and mortgage to W. was in law the act of B., and hence he could
not complain that the transfer was not recorded.

*Held,* further, that the bill must be dismissed.

BILL IN EQUITY seeking the assignment of a mortgage to a third party. The facts are stated at length in the opinion. Heard on bill, answer, and proof. Bill dismissed.

TILLINGHAST, J. This is a bill to compel the respondent to assign and transfer to a third person a mortgage of real estate.

The bill sets out that on December 2, 1896, the complainants obtained a loan of $1,500 from the New England Building Company, a corporation located in Providence, R. I., for which loan the complainants executed their negotiable promissory note payable one year after date, with interest at six per cent. per annum, payable semi-annually in advance, the payment of which note was secured by a mortgage of the same date made by the complainants, which mortgage was recorded December 23, 1896 ; that on the 15th day of January, 1897, said building company, by its instrument in writing, transferred said mortgage and note to the respondent, but that said transfer was not recorded until February 27, 1899 ; that previous to this time the complainants, having no knowledge of said transfer, had paid to said building company $190 on the principal over and above all interest on said mortgage note ; that, being the owners of the equity of redemption in the real estate conveyed by said mortgage, the complainants, on December 4, 1899, tendered to respondent the sum of $1,310.40, the same being the entire amount due at the date of the tender, and then requested the respondent to transfer the mortgage to the Mechanics Savings Bank of Providence, which request was denied. The bill therefore prays that upon payment by complainants of said amount, the court will order the respondent to transfer the mortgage to said savings bank or to such other person as complainants may select.

The answer admits the giving of the mortgage and note by complainants and the transfer thereof to the respondent, but denies the payment to said building company of the sum of $190 or any other sum on account of the principal of said note. It admits that the complainants requested a transfer

of said mortgage to the Mechanics Savings Bank and ten-
dered $1,310.40 to the respondent therefor, but denies that
this amount was all that was due on said mortgage.    It sets
up that the respondent paid the full sum of $1,500 for the
mortgage and note on the 15th day of January, 1897, and that
since that time he has regularly received the sum of $45 in
interest on the note semi-annually in advance, according to
the terms thereof, and that the interest is paid to December
2, 1899; that up to June 2, 1898, the interest was paid by
said New England Building Company, and that since then it
has been paid by the complainants, and that not until Decem-
ber 4, 1899, did the complainants claim that any part of the
principal of the note had been paid; that no part of the
principal of said note has been paid to the respondent, and
that any sums paid to said building company by complain-
ants were paid under a special agreement in writing whereby
upon the payment by complainants of the sum of $18 per
month for the term of one hundred and twenty months the
building company was to pay the interest on said notes as it
accrued, and also to pay the principal thereof on or before
ten years from the date thereof; and that the sums paid to
said building company were never appropriated to the pay-
ment of said note.

The respondent offers to transfer the mortgage as requested,
upon receiving the amount now due on said note, which he
alleges is $1,500, with interest from December 2, 1899.

The case is before us on bill, answer, and proof.    It ap-
pears that on the same day that the note and mortgage were
given, the complainants entered into an agreement in writing
with said building company, as follows:

" PROVIDENCE, R. I., December 2nd, 1896.

" For value received we jointly and severally promise to pay
to the New England Building Company or order, at its office
in the city of Providence, R. I., the sum of Eighteen Dollars
on or before the first day of January, 1897, and a like amount
on or before the first day of each succeeding month for and
during a period of one hundred and twenty months, making

one hundred and twenty payments in all, without interest. Any of said payments not paid when due shall bear interest at the rate of six per cent. per annum until paid, and any payment paid six months on or before it becomes due shall be discounted at the rate of six per cent. per annum for the time it is paid before it is due.

"In consideration of the above agreement the New England Building Company promises to pay the interest as it accrues on a certain note dated Dec. 2, 1896, and made by makers hereof to the New England Building Company for the sum of fifteen hundred dollars, and to pay the principal of said note on or before ten years from date hereof."

(1)   This agreement, as we construe it, taken in connection with the conduct of the parties thereunder, is the controlling factor in the decision of the case.   The effect of it was to constitute the New England Building Company the agent of the complainants in paying both the interest and principal of the note which they gave, and, as incidental thereto, to negotiate and transfer said note and mortgage as the company saw fit. . That is, the mortgage note was not to be paid and the mortgage securing it was not to be treated in the ordinary way by either party; but, instead of so treating it, it was mutually agreed that the indebtedness incurred by the mortgagors should be paid at the rate of $18 per month for the term of one hundred and twenty months, which payments should be in full for both principal and interest, the building company assuming the payment of the interest as it fell due, and also the payment of the principal on or before the end of the ten years.   So that, while the note and mortgage on their face constituted between the parties the ordinary relations and liabilities which arise and exist between the payor and payee of a note secured by mortgage, the agreement referred to created very different relations and liabilities. The agreement said, in effect, "we, the makers of this note and mortgage, will make you, the payee and mortgagee, a depositary of a gradually increasing fund which you, the mortgagee, shall use as far as necessary in paying the inter-

est on our mortgage, and with the balance of said fund and as a consideration therefor and of the time and manner in which we will pay it to you, you will also pay the principal of our note when it falls due." That the complainants commenced to carry out this agreement is very evident from the testimony introduced. Herbert J. Bacon, who had sole charge of all the business relating to the transactions in question on the part of the complainants, testifies that on December 2, 1896, which was the day when the mortgage was given, he paid the building company $45, and that thereafterwards he paid as follows :

| " Dec. | 2nd, | 1896, | $45 |
| " June | 2nd, | 1897, | 22 |
| " July | 1, | 1897, | 7 |
| " Aug. | 3, | 1897, | 15 |
| " Aug. | 10, | 1897, | 10 |
| " Sept. | 3, | 1897, | 13 |
| " Oct. | 5, | 1897, | 26 |
| " Nov. | 3, | 1897, | 25 |
| " Dec. | 3, | 1897, | 15 |
| " Dec. | 7, | 1897, | 24.50 |
| " Jan. | 14, | 1898, | 25 |
| " Feb. | 10, | 1898, | 25 |
| " Mar. | 6, | 1898, | 16.50 |
| " Apr. | 12, | 1898, | 24.50 |
| " May | 14, | 1898, | 30.75." |

It is evident that all of these payments, excepting the first, were made in pursuance of said agreement and that they had nothing to do directly with the payment of said note or of the interest thereon. Bacon testifies that he kept a memorandum of the payments, and that the books of the building company will show that his account is correct. He never asked to see the note or mortgage when making these payments, and evidently understood when he made them that they were not to be applied on the note, but upon the contract aforesaid. He testifies that he was paying more than the contract called for, referring particularly to the contract to pay $18 per month. It is true that the total of said small

payments, during the time they were made, exceeded the amount of $18 per month. But the proof shows that the complainants were anxious to pay the total sum called for by their agreement as much sooner than it required as they could, and that they applied the major part of the income of the property to this purpose, looking to the building company to keep an accurate account thereof. And it was evidently not until after the insolvency of the said company, and its failure to carry out its part of the said agreement, that the complainants had the remotest idea that they were paying either the interest or principal on said note in any other way than we have suggested. The express terms of the agreement show that the interest was not to be paid by the complainants, but by the building company. And no one can read it without seeing at a glance that it was the understanding of both parties that the note and mortgage were to be transferred to a third party. It provides that the building company "shall pay the interest as it accrues on the note." Pay it to whom? To itself? Evidently not; but to the owner and holder thereof, whoever it might be. And what we have said regarding the payment of interest applies with equal force to the payment of the principal.

The conduct of the complainant Bacon, after the failure of the building company and after being informed that the note and mortgage were owned by the respondent, strongly tends to show that the view we have taken is in accordance with the original understanding of the parties as to the authority of the building company to transfer the note and mortgage. The conduct to which we refer is the payment by Bacon to Wood, the assignee of the mortgage, of the full amount of interest on the note of $1,500 for a period of a year and a half without making any claim that he had previously reduced the principal of the note by payments made thereon to the building company. This conduct is wholly inconsistent with the claim which he now sets up. We are aware that in one part of his testimony he says that the sums paid were to be applied on the note, and that the agreement referred to had nothing to do with the transaction at

all. Indeed, he goes so far in the first place as to flatly deny the existence of any such agreement; but upon its being shown to him he does admit that it was made, but says that it was abrogated by the failure of the building company to perform its part thereof. In short, he substantially claims that the agreement was made and was being executed by both parties until the company became insolvent, and that this fact made the agreement as though it had never existed. He also testifies, in the face of said agreement, that the building company verbally agreed to hold said mortgage itself. Such testimony, however, cannot be held sufficient to overthrow a written contract like the one in question. When parties put their agreements in writing they must understand that such agreements are binding and obligatory upon them according to the terms thereof, and that they cannot be changed or annulled by the mere say-so of one of the parties. They must also understand that courts are very slow in allowing a solemn written agreement to be modified or changed in any particular by parol evidence. "Vox emissa volat; litera scripta manet." See Bebee v. Bank of New York, 1 Johns. 529, at p. 571; Sweet v. Stevens, 7 R. I. 375; Dyer v. Print Works, 20 R. I. 143.

Taking the testimony of the complainant Bacon as a whole, in connection with his conduct above referred to, we cannot resist the feeling that the position which he now takes regarding the payments made by him to the building company is the result of an afterthought and is not in accordance with the plain understanding of the parties when the transactions took place.

The conclusion, then, to which we arrive may be briefly stated thus: The complainants constituted the New England Building Company their agent to negotiate the mortgage note given by them and in connection therewith to transfer the mortgage, which was merely an incident to the note; and therefore the act of the building company in transferring the same to the respondent was in law the act of the complainants themselves, and hence they cannot be heard to complain that the transfer was not recorded. As the result

of this finding is decisive of the case, there is no occasion for us to consider the question, argued by counsel, as to the equitable rights of a mortgagor who innocently pays money to his mortgagee after the mortgage has been transferred to another, and before the transfer is placed on record.

The bill must be dismissed.

*Thomas F. Farrell*, for complainants.

*Lellan J. Tuck*, for respondent.

*Held*, further, that the bill must be dismissed.